UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LOUANN GRAY, KHEA TREVENA and MICHAEL RICKETTS,

Plaintiffs,

v. Case No.: 3:24-cv-952-JEP-PDB

VOLATO, INC. and VOLATO GROUP, INC.,

Defendants.
_________________________________/

# ORDER

**THIS CAUSE** is before this Court on Plaintiffs Louann Gray and Khea Trevena's[1] Motion for Summary Judgment (Doc. 64), Defendant Volato, Inc.'s Motion for Summary Judgment (Doc. 66), Defendant Volato Group, Inc.'s Motion for Summary Judgment (Doc. 67), Defendants Volato, Inc.'s and Volato Group, Inc.'s "Motion to Strike Jury Trial Demand" (Doc. 65), and the related filings (Docs. 68, 71, 72, 73, 75, 77, 78, 79, 80, 83).

## I.

The following undisputed facts are relevant to this Court's ruling.

[1] Plaintiffs Louann Gray and Khea Trvena moved to withdraw Michael Ricketts "as a named plaintiff and proposed class representative," (Doc. 47 at 1), but the Court deferred ruling on the request until after it ruled on the summary judgment motions, (Doc. 60 at 4).

Defendant Volato, Inc., which "operate[d] fractional ownership of HondaJets and provide[d] ad hoc charter services," (Doc. 75, ¶ 1), employed both pilots and non-pilot employees, (*id.* ¶¶ 8, 10). The pilots "would fly from their home to the assigned aircraft, remain with that aircraft throughout the rotation, and return home on the last day," while the "non-pilot employees worked remotely without assigned offices and were not required to report to a fixed physical location." (*Id.* ¶¶ 8, 11). The non-pilot employees worked in various states across the country, and they reported to supervisors who also worked remotely from various states. (*See* Doc. 66-1, ¶¶ 11, 18–21). Volato, Inc. and Defendant Volato Group, Inc.[2] "maintained a mailing address of 1954 Airport Road, Suite 124, Chamblee, Georgia," and Volato, Inc. also had an "office space at the St. Augustine airport." (Doc. 75, ¶¶ 13, 14).

Defendants claim that both locations, along with other occasional meeting places, generally were unmanned or not used by more than ten employees at any time. (Doc. 66 at 3–5; *see also* Doc. 66-1, ¶¶ 13–17, Doc. 66-5 at 53:8–54:22; Doc. 66-21 at 5). In 2022, Plaintiff Louann Grey "became a Volato employee" and executed an employment agreement with Volato, Inc.[3] (Doc. 75, ¶¶ 16, 18). She worked "completely remote," "had no obligation to

[2] "Volato, Inc. is a wholly owned subsidiary of Volato Group, Inc." (Doc. 75, ¶ 2).

[3] The parties dispute whether Plaintiffs were employed by both Defendants or by Volato, Inc. only. (*See* Doc. 67 at 8–16; Doc. 71 at 6–12).

report to any physical work location," and "lived in Blanco, Texas." (*Id.* ¶¶ 22–23). Plaintiff Khea Trevena also was employed by Volato, Inc., and she "resided in Jacksonville, Florida for most of her tenure with Volato, Inc., relocating to Texas approximately one month before her termination." (*Id.* ¶ 30; *see also id.* ¶¶ 27–28).[4]

On or about August 30, 2024, Volato, Inc. terminated Plaintiffs' employment—along with the employment of at least two hundred other Volato, Inc. employees—to facilitate an "Aircraft Management Services Agreement" between Volato Group, Inc. and flyExclusive. (*Id.* ¶¶ 37–39; Doc. 66-1, ¶¶ 32–37). Plaintiffs[5] subsequently brought this action under the Worker Adjustment and Retraining Notification Act ("**WARN Act**"), 29 U.S.C. §§ 2101 *et seq.* (1988), alleging that Defendants violated the WARN Act by failing to provide the sixty-day written notice of termination that section 2102(a) requires. (*See generally* Doc. 35).

---

[4] Both Plaintiffs attended occasional meetings or trainings, none of which occurred at the office space or mailing address, and Trevena "visited Volato's St. Augustine office a couple of days per week for about four months from late 2022 through January 2023, after which her visits decreased to once per quarter for the remaining year and a half." (Doc. 66 at 5–6).

[5] Plaintiffs seek to bring this case as a class action, but the Court postponed ruling on their motion for class certification until these dispositive motions were resolved. (Doc. 60 at 4).

**II.**

To succeed on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties must support their assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* (c)(1)(A)–(B). Unless and until the movant has "properly supported the motion with sufficient evidence," the opposing party "need not respond to it with any affidavits or other evidence." *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 (11th Cir. 1982).

At summary judgment, this Court does not resolve factual disputes, and it must "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion," resolving all reasonable doubts in the non-moving party's favor. *Id.* "A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude grant of summary judgment." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "There is a genuine issue of material fact if the nonmoving party

has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

**III.**

In relevant part, the WARN Act provides that:

> An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order—(1) to . . . each affected employee; and (2) to the State or entity designated by the State to carry out rapid response activities . . . and the chief elected official of the unit of local government within which such closing or layoff is to occur.

29 U.S.C. § 2102(a). "A valid WARN Act claim requires the presence of the following three elements: (1) a mass layoff [or plant closing as defined by the statute] conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled notice." *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1281 (11th Cir. 2013) (quotation and citation omitted, alteration in original). "An employer who violates the notice provisions is liable for penalties by way of a civil action," and "aggrieved employees (or their unions, as representatives) . . . may collect 'back pay for each day of violation,' 'up to a maximum of 60 days.'" *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 31 (1995) (simplified and quoting 29 U.S.C. § 2104(a)(1)).

Turning to the first element, under either a "plant closing" or a "mass layoff," the requisite employment loss must occur at the same "single site of

employment." 29 U.S.C. § 2101(a)(2)–(3). Here, the parties do not dispute that Volato, Inc. terminated the employment of more than fifty employees within a thirty-day period in August 2024. (*See* Doc. 35, ¶ 2; Doc. 66 at 9); *see also* 29 U.S.C. § 2101(a)(2) (defining "plant closing" as "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees"); 29 U.S.C. § 2101(a)(3) (defining a "mass layoff" as "a reduction in force which . . . is not the result of a plant closing; and . . . results in an employment loss at the single site of employment during any 30-day period for . . . at least 50 employees (excluding any part-time employees)"). However, the parties dispute whether or not these employees worked at a "single site of employment." 29 U.S.C. § 2101(a)(2)–(3).

None of the parties point to any binding decisions that address the WARN Act's application to a remote workforce, and Plaintiffs acknowledge that "it does not appear that *any court* has determined how the WARN Act applies to a fully remote workforce." (Doc. 80 at 3 (emphasis added)). Indeed, this issue appears to be a question of first impression in the Eleventh Circuit.[6]

[6] Since the parties' briefing closed, a few out-of-circuit district courts have addressed the WARN Act's application to a fully remote workforce. *See, e.g., Dargon v.*

**A.**

This Court "begins with a plain language reading of the . . . text." *Sides*, 725 F.3d at 1282 (citation omitted); *see also Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1105–06 (11th Cir. 2014) ("[I]n construing statutes and regulations, we first look to the[ir] language to discern whether the[ir] meaning is clear[.]" (citation omitted)). The WARN Act does not define a "site of employment," *see* 29 U.S.C. § 2101, but it uses the term throughout the statute, *see, e.g.*, 29 U.S.C. § 2101(a)(2)–(3) (incorporating "single *site of employment*" into the statutory definitions of "plant closing" and "mass layoff" (emphasis added)); *id.* § 2101(b)(2) ("[A]n employee may not be considered to have experienced an employment loss if . . . the employer offers to transfer the employee to a different *site of employment* within a reasonable commuting distance[.]" (emphasis added)).

However, the WARN Act establishes that "[t]he Secretary of Labor shall prescribe such regulations as may be necessary to carry out this [Act]." *Id.* § 2107(a). Pursuant to this authority, the Department of Labor ("**DOL**") promulgated a regulation that defines a "single site of employment." 20 C.F.R. § 639.3(i) (1989).[7] The DOL regulation states that a "single site of employment

---

*Xtend Healthcare, Inc.*, No. 3:25-cv-00013, 2026 WL 882761, at *5–14 (M.D. Tenn. Mar. 31, 2026); *Hubbard v. Goldschmitt & Assocs., LLC*, No. 1:25-cv-812, 2026 WL 767685, at *3–4 (E.D. Va. Mar. 18, 2026).

[7] This Court recognizes that, post *Loper Bright*, it "must exercise [its] independent

can refer to either a single location or a group of contiguous locations." 20 C.F.R. § 639.3(i)(1). Moreover, for "workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons)," the site of employment can be where "they are assigned as their home base," where "their work is assigned," or where "they report." *Id.* § 639.3(i)(6). The regulation also states—without elaboration—that "[t]he term 'single site of employment' may also apply to truly unusual organizational situations where the above criteria do not reasonably apply," and that "[t]he application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable." *Id.* § 639.3(i)(8). The parties' dispute centers on the applicability of subsection (6) and subsection (8) of the regulation.

Plaintiffs argue that despite the remote nature of their work, they are covered under the WARN Act, and thus they should have received notices prior

judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024); *see id.* at 395 (noting that "the role of the reviewing court" is to "recogniz[e] constitutional delegations, fix[ ] the boundaries of the delegated authority, and ensur[e] the agency has engaged in reasoned decisionmaking within those boundaries") (simplified). However, no party raises any claim or argument that the regulatory definitions exceed DOL's delegated authority; instead, all of the parties heavily rely on the regulation, disputing only its proper interpretation and application to this case. (*See* Doc. 64 at 13–15; Doc. 66 at 15–18). Thus, this Court will assume, without deciding, that the regulation is a faithful construction of the statutory language. *See Schwab v. Rsch. Triangle Inst.*, No. 1:25CV481, 2026 WL 673105, at *3 (M.D.N.C. Mar. 10, 2026).

to their termination. Specifically, they argue that because "[t]here is extensive testimony that no employees had a fixed work location," for purposes of section 2101(a), "they should be considered as all working for the same office – where Volato considered its main address to be: 1954 Airport Rd, Suite 124 Chamblee, GA." (Doc. 64 at 13). This is despite the fact that "[t]here were no employees assigned to, or who worked out of, that office." (*Id.* at 5).[8]

In response and in their own motion for summary judgment, Defendants[9] argue that there was no single site of employment to which more than fifty employees reported, and that Volato, Inc.'s Chamblee, Georgia headquarters was not a functional office space. (*See* Doc. 66 at 12–18; Doc. 73 at 10–13). Defendants also contend that any other possible location—like the St. Augustine office—would not meet the requirements under the WARN Act. (*See* Doc. 66 at 3–5, 13–16). In their response, Plaintiffs do not dispute this proposition; they instead assert that Volato, Inc.'s headquarters is the site of employment. (Doc. 72 at 9; *see also* Doc. 64 at 13). Thus, the key question before

---

[8] Defendants state that the location "had a single desk, was not used as an office and [was] 'just for show' and 'not useful in any way,'" but also that "[o]ne employee would periodically check the mailbox and receive packages at this location." (Doc. 73 at 12) (citations omitted).

[9] Defendant Volato Group, Inc. purports to "join[ ]" Volato, Inc.'s motion for summary judgment, (Doc. 66 at 1 n.1), while also bringing its own motion for summary judgment on different grounds, (*see generally* Doc. 67). As Plaintiffs note, (Doc. 71 at 1 n.1), this violates Local Rule 3.01(b). Therefore, this Court construes Volato, Inc.'s motion as brought by both Defendants and will strike Volato Group, Inc.'s successive motion for summary judgment.

this Court is whether Volato, Inc.'s headquarters constitutes a "single site of employment" under section 2101(a). And because the parties focus their dispute on the regulation, this Court will focus its analysis accordingly.

**B.**

This Court begins with subsection six of the regulatory definition of "[s]ingle site of employment":

> For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

20 C.F.R. § 639.3(i)(6).

Plaintiffs assert that this provision "governs . . . employees without a fixed place of work," and thus includes remote workers, who can work from any location. *Harbert v. Healthcare Servs. Grp., Inc.*, 391 F.3d 1140, 1152 (10th Cir. 2004) (determining that an employee had a "fixed place of work," despite reporting to another location, and that it was her site of employment); *see also* (Doc. 64 at 13). In response, Defendants argue that Plaintiffs rely only on cases in which the employer "had *some* physical location to which employees reported or from which assignments were generated," and that, by contrast, "most Volato employees were never required to report to a physical worksite to

perform their duties," and there was no physical office space used by any significant number of employees. (Doc. 73 at 11–12).[10]

Upon review, subsection six of the regulation does not support Plaintiffs' argument. First, Plaintiffs' "primary duties" did not "require travel from point to point," 20 C.F.R. § 639.3(i)(6), as "all employees were fully remote and could work anywhere," (Doc. 72 at 6). Nor were the employees "outstationed," 20 C.F.R. § 639.3(i)(6), "as remote workers can theoretically work from wherever they open their laptop . . . [and] are not outstationed to a particular location," *In re Sunnova Energy Int'l Inc.*, No. 25-90160, 2026 WL 598476, at *5 (Bankr. S.D. Tex. Mar. 3, 2026).

This leaves only the last category: workers "whose primary duties involve work outside any of the employer's regular employment sites." 20 C.F.R. § 639.3(i)(6). Plaintiffs don't fit within this category, either. While they did not work at any regular employment site of Defendants, that is because Defendants did not have any regular employment sites. (*See* Doc. 64 at 5). Furthermore, in context, subsection six encompasses only "truly mobile workers." *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 809 (4th Cir. 2007) ("Although subpart (6) could be read literally to cover almost any employee

[10] To the extent any possible class members reported to physical locations—*i.e.*, the pilots—this does not alter the outcome for the named Plaintiffs. *See E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (concluding that "the named plaintiffs were not proper class representatives" because their claims lacked merit).

who leaves her office, we believe it was intended to apply only to truly mobile workers without a regular, fixed place of work."). Mobile workers—whose duties require travel—are distinct from remote workers, whose duties do not.

This conclusion carries added force in light of the non-exhaustive list of the kinds of workers whom subsection six governs: "railroad workers, bus drivers, [and] salespersons." 20 C.F.R. § 639.3(i)(6). These "jobs are characterized by travel and mobility." *Meson*, 507 F.3d at 809; *see also Teamsters Loc. Union 413 v. Driver's, Inc.*, 101 F.3d 1107, 1110 (6th Cir. 1996) ("[S]ubpart [six] addresses employees who travel from place to place in the course of performing their job."). Thus, other district courts have persuasively concluded that subsection six applies only to workers who "travel[ ] routinely as a part of their professional responsibilities." *Hubbard*, 2026 WL 767685, at *4; *Dargon*, 2026 WL 882761, at *13 ("Subpart 6 is meant to apply *solely* to mobile workers, i.e., those who *travel for* work, and not remote (non-mobile) workers . . . who telecommute and do not otherwise *travel for* work."). This Court shares that view.

Here, Plaintiffs did not have any obligation to travel to or work from a specific location, and they "could work anywhere." (Doc. 72 at 6). Accordingly, they fall outside the final category of workers specified in subsection six. But even if Plaintiffs were the kind of mobile workers whom that category embraces, their "site of employment" would not be Volato, Inc.'s headquarters,

and Plaintiffs cannot otherwise establish that 50 or more terminated employees shared the same site of employment.

For employees falling within subsection six, their site of employment is wherever “they are assigned as their home base,” “their work is assigned,” or “they report.” 20 C.F.R. § 639.3(i)(6). Here, Plaintiffs did not have a home base, or if they had one, it was wherever they chose to work. *See Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 146 (3d Cir. 1998) (“[A] traveling employee’s ‘home base’ must at a minimum be a location at which the employee is physically present at some point during a typical business trip.”); *In re Storehouse, Inc.*, No. 06-11144-SSM, 2010 WL 4453849, at *4 (Bankr. E.D. Va. Nov. 3, 2010) (opining that “a telecommuter’s single site of employment [would be] his or her home”).

As to the place where Plaintiffs reported or their work was assigned, this Court would look to the location where “the day-to-day” operational decisions were made, not where “[t]he centralized payroll and certain other centralized managerial or personnel functions” occurred. *Teamsters Loc. Union 413*, 101 F.3d at 1111. As such, this Court looks to where Plaintiffs’ supervisors worked. Defendants assert that the supervisors also worked remotely, and that each supervised 47 or fewer employees. (Doc. 66-1, ¶¶ 18–20). Plaintiffs do not rebut this assertion. (Doc. 72 at 5, 9). Nor do they assert that any supervisor or manager operated from Volato, Inc.’s headquarters. (*See* Doc. 64

at 5 (acknowledging that "no employees [were] assigned to, or [ ] worked out of, that office"). Thus, any location to which Plaintiffs reported or from which they received work assignments was not a "site of employment" for fifty or more employees and, thus, cannot support any WARN Act claim. *See* 29 U.S.C. § 2101(a)(2)–(3) (requiring "an employment loss at the single site of employment" for 50 or more employees).

Plaintiffs argue that despite the lack of a physical site of employment for fifty or more individuals, the employees "should be considered as all working for the same office," (Doc. 64 at 13), because they "were all working toward the same operational purpose," (Doc. 72 at 8). But considerations of operational purpose are relevant only when determining whether "[n]on-contiguous sites in the same geographic area" are a "single site of employment" under subsections three through five. 20 C.F.R. § 639.3(i)(3)–(5). Nor would the analysis focus on the overall corporate purpose, as Plaintiffs appear to argue. *See Int'l Union, United Mine Workers v. Jim Walter Res., Inc.*, 6 F.3d 722, 726 (11th Cir. 1993) (concluding, in the context of determining whether different mining locations were a single site of employment under subsections four and five, that the location of "corporate management" was not relevant to such a determination, and instead relying on the place where "the day-to-day management and personnel" decisions were made).

For all the foregoing reasons, this Court concludes that under the plain language of subsection six of the regulation, Plaintiffs' site of employment was not Volato, Inc.'s headquarters.

**C.**

Plaintiffs also urge this Court to apply subsection eight of the regulation. That subsection states that "[t]he term 'single site of employment' may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable." 20 C.F.R. § 639.3(i)(8). Plaintiffs assert that Defendants' organizational structure "could not have been anticipated . . . when the WARN Act was enacted," (Doc. 72 at 9), and that because this case involves employment loss for "nearly all of the employees" and "the closure of most of the [Defendants'] business, at its primary address," Volato, Inc.'s headquarters should be deemed all employees' "single site of employment," (Doc. 64 at 15).

In response, Defendants assert that any cases relying on this provision are factually distinct and involve at least some physical work location. (Doc. 73 at 12–13). They also argue that Plaintiffs' interpretation "disregard[s] the statute's plain language" and invites this Court to "rewrite the statute." (Doc. 78 at 4).

To be sure, if a regulation would alter "the statutory framework," then it "cannot be within the Secretary's power to issue regulations 'necessary to carry out' the Act." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 96 (2002); *see also Miller v. United States*, 294 U.S. 435, 440 (1935) ("The only authority conferred, or which could be conferred, . . . is to make regulations to carry out the purposes of the act—not to amend it." (citations omitted)).

As such, this Court first turns to the plain meaning of the phrase used in the statute: "site of employment." *See Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc) ("[C]ourts should always begin the process of legislative interpretation . . . with the words of the statutory provision." (citations omitted)). At the time Congress enacted the WARN Act, "site" referred to "the position or location of a town, building, etc., esp. as to its environment," or "the area or exact plot of ground on which anything is, has been, or is to be located." *Site, The Random House Dictionary of the English Language* (2d ed. 1987); *see also Site, Webster's Third New International Dictionary* (3d ed. 1986) (defining "site" as "the original or fixed position of a thing" or "a space of ground occupied or to be occupied by a building"). Thus, in the context of section 2101(a), "site" must refer to a physical location.

Turning to "of employment," employment could mean "an act or instance of employing someone or something" or "an occupation by which a person earns a living; work; business." *Employment, The Random House Dictionary of the*

*English Language* (2d ed. 1987); *see also Employment, Webster's Third New International Dictionary* (3rd ed. 1986) (defining "employment" as "activity in which one engages and employs his time and energies" or "the act of employing someone or something or the state of being employed"). Therefore, "site of employment" carries two possible meanings—the physical location where the act of employing a person takes place, or the physical location where a person's work is performed.

Plaintiffs ask this Court to expand "site of employment" beyond these possible meanings to include a location where no employees worked or reported and no employer employed or supervised them. They contend that under this "catchall clause," (Doc. 72 at 9), all employees' "site of employment" should be deemed Volato, Inc.'s largely vacant headquarters merely because they all "work[ed] *for* the same office," (Doc. 64 at 13 (emphasis added)), inasmuch as they all worked for the same company. Plaintiffs' approach to subsection eight would include essentially *any* business, regardless of where its employees work, as long as a sufficient number work *for* the company. Such a view runs squarely against the WARN Act's text. Indeed, to the extent there were any doubt whether the phrase "site of employment" could bear the meaning that Plaintiffs urge, the WARN Act's other uses of the phase resolve it in Defendants' favor.

Section 2101(b)(2), for example, provides that "an employee may not be considered to have experienced an employment loss if . . . the employer offers to transfer the employee to a different *site of employment* within a reasonable commuting distance[.]" 29 U.S.C. § 2101(b)(2) (emphasis added). Here, in its emphasis on an employee's commuting distance, the statute plainly uses the term "site of employment" to refer to the physical location where the employee reports or performs his or her work. At a minimum, the term cannot refer to a largely vacant office where no employees work or report, and where no employer employs or supervises them. Absent some contrary indication, this Court will presume consistent usage of the same term throughout the WARN Act, and especially within the same section of the Act.[11] No such contrary indication appears. Therefore, "site of employment" caries the same meaning in section 2101(a)(2)–(3) that it does in section 2101(b)(2).

The function and operation of section 2102(a)(2) make this consistent usage even more apparent. Section 2102(a)(2) requires notice "to the State or

[11] "[T]there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning," but the presumption can "yield[ ] whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932). The presumption carries even greater force when interpreting a term that appears "in the same section of [a] statute." *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 171–72 (2012). That is true of the term "single site of employment," which appears not only in section 2101(a), but also in section 2101(b).

entity designated by the State to carry out rapid response activities under section 3174(a)(2)(A) of this title, and the chief elected official of the unit of local government within which such [plant] closing or [mass] layoff is to occur." 29 U.S.C. § 2102(a)(2). And under section 3174(a)(2)(A), statewide rapid response activities "shall include . . . provision of additional assistance to local areas that experience disasters, mass layoffs, or plant closings, or other events that precipitate substantial increases in the number of unemployed individuals, carried out in local areas by the State, working in conjunction with the local boards and the chief elected officials for the local areas." 29 U.S.C. § 3174(a)(2)(A)(i)(II). These provisions clearly contemplate the effect of a mass layoff or plant closing on the specific geographical area where terminated employees reported or performed their work—otherwise there would be no reason for a state or local government to prepare for a substantial increase in unemployment.

In other contexts, courts have noted that "[a]lthough no bright line test exists [to define 'site of employment'], the plain language of the statute and regulations makes clear that geographic proximity provides the touchstone in determining what constitutes a 'single site.'" *Teamsters Loc. Union 413*, 101 F.3d at 1109. They also have observed that "a minimal impact on the [local] community . . . militates against a finding that the WARN Act[ ]" applies. *Meson*, 507 F.3d at 811; *see also id.* ("Congress's decision to target only those

employment losses affecting a minimum of fifty employees in one locale supports our conclusion that subpart (6) does not apply on these facts."); *Wiltz v. M/G Transp. Servs., Inc.*, 128 F.3d 957, 963 (6th Cir. 1997) (noting that the "absence of [a] community impact cuts against a finding of 'single site' [of employment]" (citation omitted)). Here, Plaintiffs ask this Court to untether the WARN Act from any geographical limits and apply it to workers with no fixed locations, who are scattered across the country, merely because they all worked for the same employer. (*See* Doc. 75, ¶¶ 22, 30; Doc. 66-1, ¶ 11). This Court declines to do so. Whatever 20 C.F.R. § 639.3(i)(8) might mean, it cannot provide a red pen to re-write the statute that Congress enacted. *Ragsdale*, 535 U.S. at 96; *Miller*, 294 U.S. at 440.

Lastly, while Plaintiffs direct this Court to non-binding authorities, this Court finds many of them unpersuasive, *see, e.g.*, *Hoover v. Drivetrain LLC*, No. AP 20-50966, 2022 WL 3581103, at *4 (Bankr. D. Del. Aug. 19, 2022) (noting that "the text of the regulation undoubtedly covers remote employees," but relying only on caselaw involving mobile workers), or clearly distinguishable, *see, e.g.*, *Kane v. PaCap Aviation Fin., LLC*, No. CV 19-00574, 2024 WL 5485919, at *32 (D. Haw. Sept. 13, 2024) (concluding that, under the "truly unusual organizational structure" catchall in subsection eight of the regulation, the WARN Act applied to 20% of the defendant's employees who worked at a different location); *Davis v. Signal Int'l Tex. GP, L.L.C.*, 728 F.3d

482, 488 (5th Cir. 2013) (concluding that a company's two facilities, only a mile apart from one another, constituted a single site of employment); *Int'l Union, United Mine Workers*, 6 F.3d at 724 (relying on the DOL regulation in determining the geographical bounds of a single site of employment, as opposed to separate sites of employment managed by the same employer).

Accordingly, this Court concludes that Volato, Inc.'s headquarters was not the site of employment for Plaintiffs or the other Volato, Inc. employees.[12] As Plaintiffs propose no other location as a site of employment and do not raise any other legal or factual disputes as to Defendants' claim that any other physical locations similarly lack the requisite number of in-person employees, Defendants have met their burden and are entitled to summary judgment on this issue, and Plaintiffs are not entitled to summary judgment. Because an employment loss for the requisite number of employees at a single site of employment is a prerequisite to any WARN Act liability, *see Int'l Union, United Mine Workers*, 6 F.3d at 724–27, Defendants' motion for summary judgment will be granted, and Plaintiffs' motion for summary judgment will be denied.

[12] With the possible exception of the one employee who visited the location regularly to collect mail. (Doc. 73 at 12).

**IV.**

In light of the foregoing, it is **ORDERED**:

1. Plaintiffs Louann Gray and Khea Trevena's Motion for Summary Judgment (Doc. 64) is **DENIED**.

2. Defendant Volato, Inc.'s Motion for Summary Judgment (Doc. 66) is **GRANTED**.

3. Defendant Volato Group, Inc.'s Motion for Summary Judgment (Doc. 67) is **STRICKEN**.

4. Defendants Volato, Inc. and Volato Group, Inc.'s "Motion to Strike Jury Trial Demand" (Doc. 65) is **DENIED AS MOOT**.

5. The Clerk is directed to enter judgment, in favor of Defendants and against Plaintiffs on Count I, providing that Plaintiffs shall take nothing.

6. The Clerk shall terminate all pending motions and deadlines and close the file.

**DONE** and **ORDERED** in Jacksonville, Florida on September 29, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record